# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No. **09-21112**

**CIV - GOLD**

/ McALILEY

FILED by_____ D.C.

**APR 2 4 2009**

STEVEN M. LARIMORE
CLERK U S DIST CT
S. D. of FLA. – MIAMI

IOANNIS KAFOUROS,                    )
                                     )
    Plaintiff,                       )
                                     )
vs.                                  )
                                     )
CEGW, INC./TIMES-SHAMROCK            )
COMMUNICATIONS d/b/a BALTIMORE       )
CITY PAPER and VAN SMITH,            )
                                     )
    Defendants.                      )
_____/

## NOTICE OF REMOVAL

    Defendant VAN SMITH ("Smith") by and through his undersigned attorneys, hereby gives notice of the removal of the action, *Ioannis Kafouros v. CEGW, Inc./Times-Shamrock Communications d/b/a Baltimore City Paper and Van Smith*, Case No. 09-21441CA02 filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "State Action") to the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. §§ 1441 and 1446.  In support of its removal, Smith states as follows:

### Factual Predicate

    1.    Plaintiff filed the State Action on March 17, 2009.  Smith received a copy of the Complaint in the State Action on March 31, 2009.[1]  The State Action purports to state a cause of action against Smith for defamation.

---

[1]   Smith received notice of this action via U.S. Mail and files this Notice in compliance with 28 U.S.C. 1446(b), without waiving any defenses, including his right to object on the basis of improper service.

### Diversity Jurisdiction

2.      The State Action is one over which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332(a)(1). Pursuant to 28 U.S.C. § 1332(a)(1), the district courts of the United States have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states   This Court has diversity jurisdiction over the State Action pursuant to 28 U.S.C. §1332(a)(1) because:

a.      The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Plaintiff alleges that "[t]his is an action for damages in excess of One Million Dollars ($1,000,000.00), exclusive of costs and interest." (Compl. ¶ 1.)

b.      As alleged at Paragraph 2 of the Complaint, Plaintiff is an individual residing in Miami-Dade County, Florida, at all relevant times.

c.      Smith is an individual who at all relevant times is and was a citizen of Maryland.

d.      Defendant CEGW, Inc./Times-Shamrock Communications ("CEGW") is a Delaware corporation, whose principal place of business is Scranton, Pennsylvania.

Therefore, pursuant to 28 U.S.C. § 1332(a)(1), the State Action may be removed to this Court.

### Procedural Compliance

3.      As required by 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Smith in the State Action, and other papers filed, are appended hereto as Exhibit "A."

2

4.      As required under 28 U.S.C. § 1446(b), this Notice of Removal is filed within thirty days after Smith received Plaintiff's Complaint.  The Complaint was filed on or about March 17, 2009.  As noted above, Smith received the Complaint on March 31, 2009.[2]

5.      As required by 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal is being served on Plaintiff and, together with a copy of the Notice of Removal and supporting papers, will be filed with the Clerk of the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

6.      Pursuant to Rule 81(c) of the Federal Rules of Civil Procedure, Smith will move, answer or otherwise respond within the longer of either twenty days after being served with initial process or five days after filing this Notice of Removal.[3]

7.      No admission of fact, law, or liability is intended by this Notice of Removal, and all defenses, affirmative defenses, and motions are hereby preserved.  Smith further reserves the right to amend or supplement this Notice of Removal.

---

[2]   CEGW has not yet been served with the Complaint.  By and through undersigned counsel, CEGW joins in this petition, preserving all defenses, including those as to lack of service.

[3]   By joining in removal of this matter to federal court, CEGW likewise does not waive the right to object to the court's personal jurisdiction or to the Southern District of Florida as the proper venue for Plaintiff to bring his claim.

3

WHEREFORE, Defendant, VAN SMITH, removes this action from the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to the United States District Court for the Southern District of Florida.

Dated: April 24, 2009

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Attorneys for Defendants*
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:   (305) 579-0717
Email:  bassh@gtlaw.com
Email:  evansp@gtlaw.com

By:_____
  HILARIE BASS
  Florida Bar No. 334243
  D. PORPOISE EVANS
  Florida Bar No. 0576883

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Notice of Removal was served by facsimile and U.S. Mail upon Joel S. Magolnick, Esq., de la O., Marko, Magolnick & Leyton, 3001 S.W. 3rd Avenue, Miami, Florida, 33129, this 24th day of April, 2009.

_____
D. PORPOISE EVANS

4

# EXHIBIT 'A'

IN THE CIRCUIT COURT FOR THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 09-21441 CA 02
FLORIDA BAR NO. 776068

IOANNIS KAFOUROS,

        Plaintiff,

vs.

CEGW, INC./TIMES-SHAMROCK
COMMUNICATIONS d/b/a BALTIMORE
CITY PAPER and VAN SMITH,

        Defendants.

_____/

**SUMMONS**

*All-States Process Services, Inc.*
*13015 S.W. 89 Place, Suite 221*
*Miami, Florida 33176*
*(305) 971-9634  Fax (305) 255-7072*
*www.process-service.net*

THE STATE OF FLORIDA:

To Each Sheriff of Said State:

**YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint in this action on
Defendant(s):

**VAN SMITH**
Baltimore City Paper
812 Park Avenue
Baltimore, MD 21201

The Defendant is required to serve written defenses to the Complaint on Plaintiff's attorney, to wit:

name of attorney in charge:
whose address is:

Joel S. Magolnick, Esq.
de la O, Marko, Magolnick & Leyton
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000

within twenty (20) days after service of this Summons on that Defendant, exclusive of the day of service,
and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's
attorney or immediately thereafter. If Defendant fails to do so, a default will be entered against the
Defendant for the relief demanded in the Complaint.

DATED ON _____**MAR 2 4 2009**_____, 2009.

HARVEY RUVIN
as Clerk of Said Court

By:_____
   as Deputy Clerk
   (SEAL)

## IMPORTANT

A lawsuit has been filed against you. You have 20 calender days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

## IMPORTANTE

Usted ha sido demando legalmente. Tiene 20 días, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentaria ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso de tribunal. Existen otros requisitos legales. Si lo desea, puede consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORANT

Des poursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pou vous proteger. Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre salsis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d' autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de referent d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire porvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Clerk of Courts
(Secretario del Tribunal)

Dade County Courthouse
Room 138
73 West Flagler Street
Miami, Florida 33130

IN THE CIRCUIT COURT OF THE
11th JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

FLORIDA BAR NO.:27660 1 CA 0 2

IOANNIS KAFOUROS,

    Plaintiff,

vs.

CEGW, INC./TIMES-SHAMROCK
COMMUNICATIONS d/b/a BALTIMORE
CITY PAPER and VAN SMITH,

    Defendants.
_____/



## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, Ioannis Kafouros ("Kafouros" or "Plaintiff"), sues the defendants, CEGW,

Inc./Times-Shamrock Communications ("Times-Shamrock") d/b/a Baltimore City Paper

("City Paper"), and Van Smith ("Smith") (collectively, the "Defendants"), and, as

grounds, states as follows:

## JURISDICTION AND PARTIES

    1.    This is an action for damages in excess of One Million Dollars

($1,000,000.00), exclusive of costs and interest.

    2.    At all relevant times, Kafouros, who goes by the first name "John," was a

private individual and a resident of Miami-Dade County, Florida and otherwise *sui juris*.

    3.    At all relevant times, Times-Shamrock was a foreign corporation.

    4.    Upon information and belief, at all relevant times, Smith was a resident of

Baltimore, Maryland and otherwise *sui juris*.

5.      At all relevant times, Times-Shamrock was the owner and publisher of the
City Paper.

6.      At all relevant times, Smith was the agent, apparent agent, employee
and/or representative of Times-Shamrock d/b/a City Paper and any and all wrongful
acts committed by Smith were committed individually and on behalf of Times-Shamrock
d/b/a City Paper.

7.      Jurisdiction over the non-resident defendants is proper pursuant to
§48.193, Fla.Stat., by virtue of the fact that Defendants have committed tortious acts
specifically directed at persons in the State of Florida and/or caused injury to persons
within the state of Florida.

8.      Venue is proper in this Judicial Circuit by virtue of the fact that the
Defendants' tortious acts and the injuries sustained by Kafouros occurred in this Judicial
Circuit.

## FACTUAL ALLEGATIONS

9.      City Paper was founded in 1977 and, according to Times-Shamrock, it is
the largest weekly publication in both the City of Baltimore and State of Maryland. *See*
www.citypaper.com/about/default.asp; and
www.timesshamrockcommunications.com/newspaper_group.html.

10.     In addition to the written articles that appear in City Paper's print version,
at all relevant times, City Paper also published its articles online on its website, where
the articles are accessible on a world wide basis to anyone with internet access.
According to City Paper,

> [its] innovative website, City Paper Online, easily reaches web users in the
> Baltimore/Washington D.C. metropolitan area, as well as around the
> country and world. The easy-to-navigate format makes our site a popular
> Web destination with our growing audience of online readers. The site

      currently averages 300,000 unique visitors and 1.75 million page views per month.

www.citypaper.com/about/default.asp

11.    In the 1980's and 1990's, an individual named Ioannis Kafouros, unrelated to Plaintiff, operated restaurants in Baltimore named "Crazy John's," as well as a nightclub in Baltimore named "Volcano's." This individual was known as "Crazy John" Kafouros ("Crazy John").

12.    In the 1990's Crazy John was convicted in federal court in connection with an interstate stolen goods ring. In or about 1999, however, prior to his sentencing, Crazy John allegedly fled the United States for Greece, thus becoming a federal fugitive.

13.    In the 1990's, City Paper reported on the Crazy John conviction and the fact that he had fled.

14.    Plaintiff is the owner of Mykonos Restaurant in Miami, Florida and has resided in Miami for over twenty (20) years.

15.    Between August 22, 2008 and in or about October 2008[1], Defendants wrote and published, both in print and online, stories in the City Paper containing false and defamatory statements about Plaintiff, portraying Plaintiff as Crazy John Kafouros, the federal fugitive.

16.    Specifically, in the August 22, 2008 online version of City Paper, a copy of which is attached hereto as Exhibit "A," Defendants wrote and published the following false and defamatory statements about Plaintiff:

---

[1] It is not clear when the last offending article first appeared in the online version of City Paper. It is believed to have been on or about October 6, 2008. It is also believed, however, that the offending article remained online until as late as November 4, 2008.

    a.  "Thus, Crazy John the federal fugitive appears to be living quite openly in Miami, running an award-winning restaurant[2], and not the least bit concerned he could be sent straight to federal prison if authorities find him."

    b.  "[Plaintiff's son, Alexios Kafouros] confirmed that his father *is the same* Ioannis Kafouros as the one from Baltimore, and this (sic) his mother, Diane Kafouros, lives in Baltimore." (emphasis added).[3]

17.  The foregoing statements, which were intended by Defendants to refer to Plaintiff, and which were understood as such by those reading the article, are false because:

    a.  Plaintiff, who lives in Miami and owns the Mykonos Restaurant specifically referenced in the article, is not now, nor has he ever been, a federal fugitive; and

    b.  while Plaintiff lived in Baltimore more than 20 years ago, Alexios Kafouros, Plaintiff's son, never stated or even implied that his father was the same Ioannis Kafouros who was a federal fugitive that fled Baltimore 10 years ago.

    c.  Moreover, when asked by Smith as to whether his mother's name was Diane (the name of "Crazy John's" wife), Alexios Kafouros specifically told Smith that his mother's (Plaintiff's wife) name is Maria, not Diane.  Maria Kafouros lives in Miami.

18.  Plaintiff has fully complied with his notice obligations , as set forth in

---

[2]  The August 22, 2008 article specifically refers to "Mykonos Restaurant," owned by Plaintiff.

[3]  The same story appeared in the August 27, 2008 print version of the City Paper.

Florida Statutes §770.01. A copy of the September 16, 2008 letter is attached hereto as Exhibit "B." Additionally, on September 16, 2008, Plaintiff demanded a retraction from Defendants, pursuant to Florida Statutes §770.02 (see Exhibit "B"). Defendants, however, failed to timely publish a full and fair correction, apology or retraction.

19.    In fact, on or about September 24, 2008, Defendants, in an inadequate attempt at a "correction" of the false and defamatory materials, perpetuated the defamation by stating, as the last item in City Paper's "mail" section, that "[Plaintiff] *appears* not to be federal fugitive Ioannis 'Crazy John' Kafouros," and by further implying that the final determination of that issue is subject to an investigation by the U.S. Marshal Service. A copy of the September 24, 2008 online article is attached hereto as Exhibit "C."

20.    Moreover, in October 2008, in the online edition of the City Paper, in another untimely attempt at a "correction," Defendants again published the following false and defamatory statement: "[Plaintiff's son, Alexios Kafouros] confirmed that his father *is the same* Ioannis Kafouros as the one from Baltimore, and this (sic) his mother, Diane Kafouros, lives in Baltimore." (emphasis added). A copy of the October 2008 article is attached hereto as Exhibit "D."[4]

21.    Making matters worse, in the same October 2008 article, Defendants continue their false and defamatory statements about Plaintiff by stating that "[Plaintiff's son] said he would give his father the message that the paper was trying to reach him about the Tillman raid at *his* Greenmount property." (emphasis added). According to the article, the "Greenmount property" which, according to Defendants' false statement, belongs to Plaintiff, refers to the property "co-owned by a federal fugitive, Ioannis

---

[4] When printed out, for some reason, the online article reflects a date of 8/27/2008. That is clearly incorrect given that the original defamatory article first appeared online on 8/27/2008 and the retraction demand was not sent until September 16, 2008.

Markos Kafouros, and his wife, Diane Kafouros," which property was "raided by federal agents."

22.     The foregoing statements, which were intended by Defendants to refer to Plaintiff, and which were understood as such by those reading the article, are false because:

      a. When asked by Smith as to whether his mother's name was Diane (the name of "Crazy John's" wife), Alexios Kafouros specifically told Smith that his mother's (Plaintiff's wife) name is Maria, not Diane. Maria Kafouros lives in Miami.

      b. Plaintiff was never a federal fugitive.

      c. Plaintiff was never married to Diane Kafouros;

      d. Plaintiff never owned the "Greenmount property;"

      e. No property owned by Plaintiff was ever raided, by federal agents or otherwise.

23.     As a direct result of Defendants' wrongful conduct, Plaintiff has been identified as being associated with organized crime and, thus, Plaintiff's safety and that of his family, has been compromised, causing significant emotional distress.   Plaintiff is now a potential "target" of (1) law enforcement involved in the prosecution of and search for "Crazy John" Kafouros and (2) people associated with "Crazy John" Kafouros who may be looking for "Crazy John" Kafouros. The articles provide individuals in both of the above categories with enough information to allow them to locate the individual whom, because of the subject articles, they incorrectly believe is "Crazy John" Kafouros.  In fact, following the publication of the subject articles, Plaintiff began receiving odd telephone calls from unidentified callers and, in December 2008, was

visited at his home in Miami, unannounced, by federal law enforcement officers and was questioned about the "Crazy John" matter.

24.     All conditions precedent to maintaining this action have been performed, satisfied, excused or waived.

### COUNT I – DEFAMATION

Plaintiff adopts and realleges each and every allegation contained in paragraphs 1 through 24 of this Complaint as though more fully set forth herein, and allege further:

25.     Between August 22, 2008 and in or about October 2008, Defendants wrote and published the articles attached as Exhibits "A", "C" and "D," in print and/or online, containing statements falsely stating and/or implying that Plaintiff is "Crazy John" Kafouros, a federal fugitive.

26.     All of the statements published were intended to refer to Plaintiff and were so understood by those reading them.

27.     The above-described statements published concerning Plaintiff were false, reckless, malicious and slanderous.

28.     The Defendants published the statements with actual knowledge of the falsity of the statements and/or in reckless disregard for their truth or falsity.

29.     In publishing the false and defamatory articles about Plaintiff, Defendants purposely avoided the truth by, among other things, ignoring and misstating known facts that contradicted the false and defamatory articles.

30.     The statements in the Articles constitute libel "per se" because they impute to Plaintiff the commission of crimes and also subject him to distrust, ridicule, contempt and disgrace.

30.     As a direct and proximate result of the Defendants' libel, Plaintiff has

suffered and will continue to suffer injury to his reputation, as well as mental pain,

suffering and anguish,  all in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendants for

compensatory damages, punitive damages upon compliance with Fla. Stat. §768.72,

costs and interest, and for such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable as of right by a jury.

Respectfully submitted,

**DE LA O, MARKO,
MAGOLNICK & LEYTON**
Attorneys for Plaintiff(s)
3001 S.W. 3rd Avenue
Miami, Florida 33129
Telephone: (305) 285-2000
Facsimile:  (305) 285-5555

By: _____
       Joel S. Magolnick, Esq.
       Florida Bar No. 776068
       magolnick@dmmllaw.com

**EXHIBIT "A"**



BALTIMORE CITY PAPER | 8/22/2008

Print

The News Hole

# Where Is Crazy John Kafouros?

BY VAN SMITH

Ioannis "Crazy John" Kafouros has been a federal fugitive (see the **"Wanted" poster here**) since he skipped town nearly a decade ago, rather than face federal sentencing for his part in an interstate stolen-goods conspiracy based in Baltimore. When Kafouros disappeared, law-enforcement authorities told *City Paper* he was believed to have gone to his native Greece (**"One the Lam," Mobtown Beat, June 2, 1999**). *City Paper* was curious about the government's efforts to find Kafouros in the years since, and where law enforcers thought he might be today, but Maryland U.S. Attorney's Office spokeswoman Marcia Murphy couldn't offer much insight.

"Can't really comment on efforts that may have been made to find Mr. Kafouros," Murphy wrote in an Aug. 22 e-mail, "but since he has been sentenced to incarceration and forfeited his appellate rights due to his flight, once in U.S. custody he will be sent to the Bureau of Prisons. No further court proceedings will be necessary."

On Aug. 21, *City Paper* called Mykonos Restaurant in Maimi, Fla., attempting to reach Kafouros. His possible connection to the restaurant was suggested by a Google search that turned up restaurant reviews in which someone named Ioannis Kafouros was quoted and identified as an owner. The restaurant's most up-to-date annual report, filed with the State of Florida, listed him as vice president.

A young man identifying himself as Alexios Kafouros got on the phone, and said Ioannis Kafouros is his father, and that his father owns Mykonos, but "he's not here right now." The young man confirmed that his father is the same Ioannis Kafouros as the one from Baltimore, and this his mother, Diane Kafouros, lives in Baltimore.

*City Paper* was trying to reach both Ioannis and Diane Kafouros because they own 1003 Greenmount Ave., the office of Xpress Bail Bond, a property that was raided by IRS and FBI agents on Aug. 18 as part of their investigation into the business practices of Baltimore businessman and ex-con Milton Tillman Jr. (**"Tillman Properties Raided by Feds," News Hole, Aug. 20**) Though Alexios Kafouros said he would pass along *City Paper*'s message to his father, Ioannis Kafouros did not return the call. Neither did Diane Kafouros, who is a real-estate saleswoman in Baltimore.

Thus, Crazy John the federal fugitive appears to be living quite openly in Miami, running an award-winning restaurant, and not the least bit concerned he could be sent straight to federal prison if authorities find him. That may change now, given the renewed publicity the Tillman raids have brought him--and given the ease with which his whereabouts were found by *City Paper*.

© 2008 Baltimore City Paper

**EXHIBIT "B"**

## dMML

de la O · Marko · Magolnick · Leyton
ATTORNEYS AT LAW

Miguel M. de la O
Charles Duke Ferguson
Daniel L. Leyton
Joel S. Magolnick
David Everett Marko
Farah J. Martinez
Christina McLamore

OF COUNSEL
Neal R. Sonnett

September 16, 2008

**BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

CEGW, Inc.
Times Shamrock Communications
149 Penn Ave.
Scranton, PA 18503

Lee Gardner, Editor  **(ALSO SENT VIA FACSIMILE)**
Baltimore City Paper
812 Park Ave
Baltimore, MD 21201

Van Smith **(ALSO SENT VIA FACSIMILE)**
Baltimore City Paper
812 Park Ave
Baltimore, MD 21201

**Re:   John Kafouros – Claim for Defamation**

Dear Sir or Madam:

This firm has been retained to represent Mr. Ioannis (John) Kafouros, a private individual living in Miami, Florida and the owner of Mykonos Restaurant ("Mr. Kafouros"), in his dispute with the Baltimore City Paper ("City Paper") and Van Smith (collectively, the "Media Defendants") regarding false and defamatory statements relating to Mr. Kafouros in an article written by Mr. Smith and published by City Paper on August 22, 2008 (the "Article").

**This letter shall serve as Mr. Kafouros's statutory pre-suit notice and his demand for retraction under Florida Statute § 770.01 and § 770.02.**

The subject matter of the Article is an individual named Ioannis "Crazy John" Kafouros, a federal fugitive formerly residing in Baltimore, Maryland, who, approximately

ten (10) years ago, disappeared prior to his sentencing for a criminal conviction. As written and published, the Article falsely, intentionally, and in a defamatory manner, depicts my client, John Kafouros, a resident of Miami, Florida and the owner of Mykonos Restaurant, as being "Crazy John" Kafouros, the federal fugitive.

Specifically, the Article contains the following false and defamatory statements which were clearly intended to refer to Mr. Kafouros:

1. "Thus, Crazy John the federal fugitive appears to be living quite openly in Miami, running an award-winning restaurant, and not the least bit concerned he could be sent straight to federal prison if authorities find him."

   **The statement is false because Mr. Kafouros, who lives in Miami and owns the Mykonos Restaurant specifically referenced in the Article, is not now, nor has he ever been, a federal fugitive.**

2. "[Alexios Kafouros] confirmed that his father *is the same* Ioannis Kafouros as the one from Baltimore, and this (sic) his mother, Diane Kafouros, lives in Baltimore." (emphasis added)

   **The foregoing statements are false because, while Mr. Kafouros lived in Baltimore more than 20 years ago, Alexios Kafouros never stated or even implied that his father was the same Ioannis Kafouros who was a federal fugitive that fled Baltimore 10 years ago. Moreover, when asked by Mr. Smith as to whether his mother's name was Diane (the name of "Crazy John" Kafouros's wife), Alexios Kafouros specifically told Mr. Smith that his mother's name is Maria, not Diane. Maria Kafouros lives in Miami.**

After the Article was published, Alexios Kafouros contacted Mr. Smith, telling Mr. Smith that the Article was wrong and that the quotes attributed by Mr. Smith to Alexios Kafouros were, in fact, misquotes. Mr. Smith ignored Alexios Kafouros's attempts to correct the inaccuracies.

The false and defamatory statements contained in the Article have caused Mr. Kafouros considerable damage. The statements were made with actual knowledge of their falsity or, at the very least, with a reckless disregard for the truth or falsity of the statements.

Kafouros – Letter to City Paper
Page 3 of 3
September 15, 2008

     Without waiving any of his rights, Mr. Kafouros hereby demands that a full and fair retraction of the foregoing statements be made in accordance with the provisions of F.S. § 770.02.

                        Sincerely,

                        Joel S. Magolnick

cc: John Kafouros

**EXHIBIT "C"**



BALTIMORE CITY PAPER | 9/24/2008

<span style="float:right; border:1px solid; padding:2px;">Print</span>

The Mail

# Best Tail Wag

I was very happy to see *City Paper* **acknowledge shelter adoption** in its Best of Baltimore issue. Congratulations to the BARCS city shelter for its good work! Your readers may not know that the SPCA and BARCS work closely together as partners. We are proud to support them in their work, taking in animals from their shelter and providing spay/neuter. As someone who works and lives in the city, I am pleased that Baltimore has cooperative shelter partners. It means more lives are saved.

**Aileen Gabbey**
**Executive director, Maryland SPCA**
**Baltimore**

Best Not Quite Right

Thanks for mentioning me in the Best of Baltimore 2008, but I don't run the i.e. reading series (**"Best Scene,"** Sept. 17). Michael Ball does. I just help by posting bulletins on MySpace and Artmobile. Was it an eerie prescience that made you mention me as the host? I have just started a new reading series with Barbara DeCesare. The name of the series is the Upward Spiral. The first reading will be on Oct. 26 at 8 p.m. at El Rancho Grande (3608 Falls Road). The readers will be David Beaudouin and Alex Hartman. Please attend if you can.

**Chris Toll**
**Baltimore**

Thanks for the honors and other mentions in the 2008 *City Paper* Best of Baltimore issue. However, there are a couple of things I should point out.

1) We have never used duck fat for our rosemary garlic fries. They have always been cooked in canola oil (although we did use peanut oil briefly in the late '90s). A correction would help put our many vegetarian customers at ease about eating our fries.

2) In your mention of Brewer's Art alumna opening new places, you missed two people: Cristin Dadant, co-owner of Clementine, who tended bar here for many years, and Jeff Smith, co-owner of Chameleon Café, who cooked here for about the same length of time.

Thanks again for our mentions. We are indeed honored.

**Volker Stewart**
**President, the Brewer's Art**
**Baltimore**

**Editor Lee Gardner responds**: *City Paper* regrets the errors regarding the i.e. series and the duck fat.

Marketplace of Ideas

What bizarro ideologue planet is plutocrat apologist Matthew Gentry living on ("Fluff Benefits and Contrary Logic," **The Mail**, Sept. 17)?

He claims that John McCain's tax cuts, while not guaranteeing job creation, "avoid worsening an already tight job market."

Barack Obama's economic policies are geared, as Sen. McCain's are not, to creating American jobs in a global economy. The difficulty with providing across-the-board tax cuts for corporations and the wealthy is the ever-increasing likelihood that such cuts will be invested in jobs in China, India, and elsewhere abroad. Sen. Obama, however, hopes to eliminate tax cuts for firms that move jobs abroad and, instead, to provide tax cuts for companies that create jobs at home.

In an age of globalization, one can either be a pure free-market ideologist or a patriot, but not both. It is clear into which category Mr. Gentry falls. And as the recent meltdown in the mortgage and investment bank sectors have demonstrated, the Chicago school/Milton Friedman/Phil Gramm/free market model--no regulation! no restraints!--has now been discredited.

To paraphrase Jesus (and the rabbis): The Market is made for man, not man for the Market.

**Luke Sanders**
**Baltimore**

Smears for Fears

Sociologist, writer, and college professor Barbara Christian once said, "I had, I felt, more pressing and interesting things to do, such as reading and studying the history and literature of black women, a history that had been totally ignored, a contemporary literature bursting with originality, passion, insight and beauty."

I thought of these words after I had read Jeffrey Anderson and Van Smith's article ("The Company You Keep," **Mobtown Beat**, Sept. 10). Were Anderson and Smith implying that an individual had a responsibility to associate with people who would do his or her reputation no harm?

As I see it, my personal business (private and a non-nosy entity) is not my friends' or associates' business, even if they have my back while I am working hard to become a successful writer, artist, and a teacher of the ministry of Jesus Christ's words from a feminist perspective.

In the book *Harlem: The Making of a Ghetto--Negro New York, 1890-1930*, by Gilbert Osofsky, the author has written, "The greater financial stability of Negro women created serious social and psychological difficulties for Negro men. Forced reliance on female economic power minimized the sense of control and responsibility that negro men had for their families, and often (more often than for other ethnic groups) led to disrupted or broken homes. This economic situation deprived Negro males of an essential symbol of full manhood. Family instability became a dominant characteristic of negro urban life in the twentieth century."

As I see it, there are a large majority of men of all racial groups (especially black men) that are mad, and at the same time frustrated, that City Hall is controlled by intelligent, good-looking black women who are doing their job effectively, and making money on their own without a "daddy-lover" making black women a queen for a day.

I am proud of the honorable Mayor Sheila Dixon, City Council President Stephanie Rawlings-Blake, Comptroller Joan Pratt, and State's Attorney Patricia Jessamy. I do not know Lavern Whitt, but I admire her innovative and effective motivation to do a documentary on the successful careers of black women working in our local government to improve the lives of everyday people in Baltimore.

It hope that Lavern Whitt will have an opportunity to complete her filming of the *Women in Power* documentary. The everyday history of black women will remain invisible if all black women believe that our stories are not worthy to be told. Write your thoughts down and tell it to your grandchildren. Find a reliable friend or family member to tell your life's journey. No journey by any one of us is insignificant.

Seems there are a lot of people who want to get rid of Mayor Sheila Dixon. I believe she is doing an excellent job despite the many challenges she faces daily. Mayor Sheila Dixon is working hard to stop teen violence, find shelter and food for the homeless, improve opportunities for poor and working people to find housing based on income, and provide for the health needs of all citizens. When you smear people's names in the media, the court system offers no mercy to the alleged accused--not fair!!

**Larnell Custis Butler**
**Woodlawn**

Ad Nauseam

I'm writing in response to "Ad-Versity" in the **Aug. 20 Mail** section.

I also "religiously" read *City Paper*, end to end. I hate to have to respond to a letter, but I think the complaints have gone far enough. STOP COMPLAINING ABOUT ADS, geesh! The women in American Apparel ads, and yes they are WOMEN, are not sweatshop workers who are forced into any type of servitude. No matter how you personally interpret the ads, if you're offended, ignore them. They do FUND a paper that you obviously enjoy-- for free. And as far as the tobacco ads, if you think *City Paper* could make that revenue elsewhere, why don't YOU buy the ad space? I don't like every ad that *City Paper* runs--I have a GREAT disdain for Boost Mobile and everyone who throws away money on prepaid cell phones--but I don't take any offense at it. It's really none of my business, right?

**Peat Marwick**
**Parkville**

I just wanted to thank all of your "oh so sensitive" readers out there for their continued rants against the American Apparel ads that are always on the back cover of your publication. I am going to admit something: I used to LIKE the American Apparel ads. I thought them to be somewhat artistic, photography-wise, in a freshman-at-a-college-for-the-arts sort of way. I thought they were an interesting change from the usual clothing ads that I saw in publications, and yes, I enjoyed them. Now, I am woman, I am a mother, and I would like to consider myself an enlightened sort of person, but not ONCE did I ever see those ads in a "sexual" light.

That is, not until you started getting letters every other week about how sexist and blatantly pornographic they were. Now whenever I look at the ads, all I can think of is, *Well, yeah, I guess that could be a sexual position.* But I never used to! So, once again, thank you sensitive *City Paper* readers. Thank you for making me now think of perversity where I never saw it before. Thank you for making me feel guilty as woman for not realizing my gender was being so victimized by these scandalous ads. How surprising it is that an "alternative" weekly paper can still be read by such uptight puritanical activists who are so anxious to point out the existence of naughty, dirty sex where we the oblivious never even knew it existed.

**Jeniye Luckart**
**Baltimore**

**Corrections**: Ioannis Kafouros, who owns and operates Mykonos Restaurant in Miami, appears not to be federal fugitive Ioannis "Crazy John" Kafouros, as suggested in recent *City Paper* coverage ("The Greek Connection," **Mobtown Beat**, Aug. 27; "Where Is Crazy John Kafouros?" **News Hole**, CityPaper.com, Aug 22),

and the Mykonos proprietor has asked *City Paper* for a retraction. *City Paper* now believes that the two men are different individuals; a formal determination is to be announced by the U.S. Marshal Service, which is investigating *City Paper*'s reporting on this matter. *City Paper* regrets the confusion and apologizes to the Mykonos owners for any troubles they've had as a result of the stories.

In addition, it turns out that our Best of Baltimore pick for Best Late-Night Dining, the Parthenon Diner, has in fact been closed for several months.

© 2008 Baltimore City Paper

**EXHIBIT "D"**



# Train your brain

DAEDALUS BOOK
WAREHOUSE OUTLE
9645 Gerwig Lane, Columbia, Md.
410-309-2730 · Open 10-7 every day

BALTIMORE CITY PAPER | 8/27/2008

Print

Mobtown Beat

# The Greek Connection
## Raided Bail Bonds Building Owned by Federal Fugitive Ioannis "Crazy John" Kafouros

BY VAN SMITH



**FAILURE TO APPEAR - CONSPIRACY TO TRA**

Entered NCIC
I.O. 5314
4-16-99

**WANTE**

Aliases: John Markos Kafouros, John Kafouros, John M. Kafouros, Ioannis Markos
Kafouros, Ioanna Markos Kafouros, Crazy John and John Markos Kafouros

Photographs taken February 12, 1998

FBI

Ioannis Markos "Crazy John" Kafouros from a 1998 FBI
Wanted poster

**Correction**: *City Paper* and senior staff writer Van Smith acknowledge that Ioannis Kafouros, aka John Kafouros, the owner of Mykonos restaurant in Miami, is not former Baltimorean "Crazy John" Kafouros, and he is not now, nor has he ever been a federal fugitive. The U.S. Marshals Service is not investigating Ioannis Kafouros, the owner of Mykonos restaurant in Miami. *City Paper* and Van Smith sincerely regret their misidentification of Ioannis Kafouros and apologize for any confusion or trouble it may have caused.

**UNTIL RECENTLY, XPRESS BAIL** Bonds was best known for its RV. It's the black one that's been parking for years along the Fallsway near the city jail complex, with the company's name painted brightly on all sides ("Going Mobile," **Quick and Dirty**, May 11, 2005). On Aug. 18, though, it was not the RV, but the company's home office--a couple of blocks east, at 1003 Greenmount Ave.--that drew notice. On that day, it was one of seven locations raided by federal agents probing the business interests of Milton Tillman Jr. and his son Milton Tillman III. Xpress is housed in a building--like several others in the immediate vicinity of Greenmount Avenue and Eager Street--co-owned by a federal fugitive, Ioannis Markos Kafouros, and his wife, Diane Kafouros.

Many Baltimoreans will remember 52-year-old Ioannis Kafouros for his Crazy John's restaurants that operated in the 1980s and '90s--one on the Block (still operating but under different ownership), another on downtown's west side--featuring pizza, hot dogs, and arcade games. Others will remember him for his nightclub, Volcano's, which operated in the 1990s at 1007-11 Greenmount. The violence at Volcano's got so bad that families of victims killed there successfully sued him and his club. Subsequently, Kafouros was convicted and sentenced in absentia for his part in an interstate stolen-goods ring ("On the Lam," **Mobtown Beat** (pdf), June 2, 1999). After he fled, authorities said they believed he had returned to his native Greece, where his family is from the island of Santorini.

On Aug 21., *City Paper* called Mykonos Restaurant in Miami, asked for Ioannis Kafouros, and reached a young man who identified himself as the owner's son, Alexios Kafouros. He confirmed that his father owns the restaurant and is the same Ioannis Kafouros from Baltimore, and that his mother, Diane, lives in Baltimore. He said he would give his father the message that the paper was trying to reach him about the Tillman raid at his Greenmount property. By press time, neither Ioannis nor Diane Kafouros, who is a real-estate agent, had returned messages.

"Yes, he is still a fugitive," Maryland U.S. Attorney's Office spokeswoman Marcia Murphy writes of Ioannis Kafouros in an Aug. 20 e-mail to *City Paper*.

Tillman Jr.'s prior ties to Kafouros involve Volcano's. The club, located in the Johnston Square neighborhood, had operated illegally from 1992 until it was shut down in 1996, according to detailed accounts published at the time in *The Sun*. Kafouros was able to keep it operating for so long thanks to the backing of a politically savvy neighborhood leader, Mary Ross, a community coordinator with the Johnston Square Community Development Corp. In return, Ross used Volcano's for community and political events. Immediately after Volcano's was shuttered, Ross started running a new nightclub, renovated by Tillman Jr., called Trilogy's, at 320 N. Eutaw St. Then-City Council President Lawrence Bell attended Trilogy's grand opening in the fall of 1996, and state Sen. Joan Carter Conway (D-43rd District) had a fundraiser there. As *The Sun* wrote, Volcano's and Trilogy's were "close cousins." Ross did not return phone calls for comment.

Though Trilogy's and Volcano's appeared to be related, the clubs' era passed. Tillman Jr. was serving time in federal prison for bribery when he renovated Trilogy's, and after he got out, he went back again on tax-evasion charges in October 1996. Kafouros caught the stolen-goods charges and went on the lam in 1999. In 2000--after Tillman III was shot in a drug deal gone bad--Tillman Jr. got out of prison and started building his real-estate and bail-bonds empire. In 2002, when those held responsible for shooting Tillman III and murdering others were brought to justice, the prosecutor in the case--Jonathan Luna, who in 2003 died a violent, suspicious death in a rural Pennsylvania stream--stood up in open court and said Tillman Jr. was a violent drug dealer who, while in prison, had made phone calls to arrange retaliation for his son's shooting.

In 2000, Kafouros added his wife's name to the deeds of his properties near the intersection of Greenmount and Eager. State business records show Tillman III incorporating Xpress Bail Bond at 1003 Greenmount Ave. this summer, though the company may have taken up residence there before then. During its first incarnation, from 2002 until it was forfeited in '05 for failure to file tax returns, Tillman III listed Xpress' principal office as 3818 Kimble Road in Northeast Baltimore--a property that was also raided on Aug. 18, and which belongs to Tillman Jr.'s ex-wife's mother, Lorraine Stansbury.

© 2008 Baltimore City Paper

# CIVIL COVER SHEET

The JS-44 Civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initialing the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| 1(a) | PLAINTIFFS – IAONNIS KAFOUROS | DEFENDANTS – CEGW, INC./TIMES-SHAMROCK COMMUNICATIONS d/b/a BALTIMORE CITY PAPER and VAN SMITH |
|---|---|---|

| (b) | COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES) – | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT – SCRANTON STATE OF PENNSYLVANIA (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|---|

Docket 09-21112-Civ-Gold | McAliley

| (c) | ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) Joel S. Magolnick, Esq., de la O., Marko, Magolnick & Leyton 3001 S.W. 3rd Avenue, Miami, Florida, 33129 (305) 285-2000 | ATTORNEYS (IF KNOWN) D. Porpoise Evans., Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida  33131 (305) 579-0519 |
|---|---|---|

| (d) | CIRCLE COUNTY WHERE ACTION AROSE/ Miami-Dade County, Florida |
|---|---|

## II. BASIS OF JURISDICTION

(PLACE AN X ONE BOX ONLY)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES

(For Diversity Cases Only)

(PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated of Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign County | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION: Defamation (Chapt. 770, Fla. Stat.)

## V. NATURE OF SUIT

(PLACE AN X IN ONE BOX ONLY)

**A CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) B
☐ 153 Recovery of Overpayment of Veteran's Benefits B
☐ 160 Stockholder's Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**A TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☒ 320 Assault, Libel & Slander
☐ 330 Federal Employer's Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending B
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**B FORFEITURE PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety-Health
☐ 690 Other

**A LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor Management Relations B
☐ 730 Labor Management Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Employee Ret. Inc. Security Act B

**A BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**A PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**B SOCIAL SECURITY**
☐ 861 HIA (1395(f))
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW 405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**A FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS Third Party 26 USC 7609

**A OTHER STATUS**
☐ 400 States Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc. B
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12USC3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions* *A or B

**A REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure B
☐ 230 Rent Lease and Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**A CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**B PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General*
☐ 535 Death Penalty
☐ 540 Mandamus & Other*
☐ 550 Civil Rights *A or B

## VI. ORIGIN

(PLACE AN X IN ONE BOX ONLY)

☐ 1. Original Proceeding
☒ 2. Removed From State Court
☐ 3. Remanded from Appellate Court
☐ 4. Refiled
☐ 5. Transferred from another district (Specify)
☐ 6. Multidistrict Litigation
☐ 7. Appeal to District Judge from Magistrate Judgment

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A ☐ under F.R.C.P. 23 | DEMAND: $1,000,000.00 | Check YES only if demanded in complaint JURY DEMAND: | ☒ Yes ☐ No |
|---|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See Instructions): | JUDGE_____ | DOCKET NUMBER_____ |
|---|---|---|---|

DATE April 24, 2009

SIGNATURE OF ATTORNEY OF RECORD

| UNITED STATES DISTRICT COURT | FOR OFFICE USE ONLY: | RECEIPT NO. 999631  Date Paid: 04/24/09 | Amount: $350.00  M/fp:_____ |
|---|---|---|---|

INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a) Plaintiffs - Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved).

(c) Attorneys. Enter firm name, address, telephone number, and attorney or record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction is based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an X in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of difference states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases).

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause.

**V. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV above, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**VI. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Refiled. (4) Check this box for cases refiled in the district court. Attach copy of order.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate's decision.

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS-44 is used to reference relating pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

*MIA 180,572,708v1 4-24-09*